| | | |
|---|---|---|
| STATE OF OREGON | ) | |
| | ) ss: | AFFIDAVIT OF MICAH CORING |
| County of Multnomah | ) | |

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Micah Coring, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1.  I am a Senior Special Agent with the Federal Protective Service (FPS) and have been since 2009. My current assignment is the Federal Protective Service Field Office in Portland, Oregon, where I am assigned to investigate general crimes. I am also a liaison for the Federal Bureau of Investigation's Joint Terrorism Task Force (JTTF) and agency representative with the Titan Fusion Center. I graduated from the Federal Law Enforcement Training Center's Criminal Investigator Training Program in August 2009. I have experience investigating crimes against federal employees and federal property, including threats and assaults on federal government employees, and damage to federal buildings and property.

2.  I submit this affidavit in support of a criminal complaint and arrest warrant for Rowan L. MCMANIGAL aka Daniel Harry MCMANIGAL. As set forth below, I have probable cause to believe that MCMANIGAL committed the crime of False Information and Hoaxes while on federal property, namely the Portland Field Office of the Immigration and Customs Enforcement, a violation of 18 U.S. Code § 1038.

3.  The facts set forth in this affidavit are based on the following: my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, my review of records related to this investigation, communication with others who have knowledge of the

Page 1 – Affidavit of Micah Coring

events and circumstances described herein, and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for an arrest warrant, it does not set forth each fact that I or others have learned during this investigation.

## Applicable Law

4.     18 U.S.C. § 1038 makes it an offense to engage in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111, or 113B of this title, section 236 of the Atomic Energy Act of 1954 (42 U.S.C. 2284), or section 46502, the second sentence of section 46504, section 46505(b)(3) or (c), section 46506 if homicide or attempted homicide is involved.

5.     Title 18, United States Coe Chapter 40 defines offenses relating to explosive devices. Specifically, 18 U.S.C. § 844(f)(1) prohibits the malicious destruction of property, or attempted destruction of property belonging to or leased to the United States by means of fire or an explosive. Pursuant to 18 U.S.C. § 844(j), "explosive" includes "any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion."

///

///

Page 2 – Affidavit of Micah Coring

**Statement of Probable Cause**

6. Since on or about May 26, 2020, protesters have gathered regularly in Portland public areas and parks in downtown Portland, as well as areas immediately adjacent to the Portland Field Office for the Immigration and Customs Enforcement (ICE). The federal government leases the entire facility occupied by ICE, as depicted below.



7. When they have occurred, Portland protests have often been followed by nightly criminal activity in the form of vandalism, destruction of property, looting, arson, and assault. As a result, the ICE field office, as well as other federal and state buildings, has experienced significant damage to the façade and building fixtures during the last year. Additionally, mounted building security cameras and access control devices have been vandalized and numerous windows have been broken.

Page 3 – **Affidavit of Micah Coring**

8. During those protests, FPS law enforcement officers, Deputy U.S. Marshals, Boarder and Customs Enforcement Agents, and other federal law enforcement officers working to protect the federal property in general and the ICE facility specifically, have been subjected to threats, high intensity lasers targeting officers' eyes, thrown rocks, bottles, and balloons filled with paint from demonstrators while preforming their duties. Frequently, individuals have thrown flammable material towards officers, including fireworks, Molotov cocktails, and other incendiary devices. Officers know that these materials are taken to protests by the protesters in backpacks and stored on their person or someplace close by until they deem it is appropriate to deploy them.

9. On December 19, 2020, a previously advertised protest formed up in the driveway of the ICE facility, along adjacent city sidewalks, and on Bancroft St. By 9:00 p.m., approximately 30 people dressed all in black were in attendance. Individuals in this group were observed by law enforcement via the facility's Closed Circuit Video (CCV) to be vandalizing the ICE facility.

10. At approximately 9:11 p.m., I observed a person later identified as MCMANIGAL pull the wiring harness from facility's card reader/intercom located in the driveway of the ICE facility. The video was recorded by a fixed position infra-red camera. Infrared cameras are used to see in dark areas and do not render true colors, but black, whites and shades of grey depending on the surfaces ability to reflect infrared light. Below is a screenshot from the security video showing the individual.

Page 4 – Affidavit of Micah Coring



11. Following MCMANIGAL's movements to a field of vision covered by a color camera, I was able to determine that the individual was petite, wearing tight pants, a black jacket, a black backpack, a tan/green military-style helmet and was in possession of a full-face military-style gasmask. From this camera angle, I observed MCMANIGAL loiter in the driveway for approximately 25 minutes. MCMANIGAL moved to the walkway immediately in front of the building's main entrance and stood approximately 10' from the doors which officers routinely deploy from for civil disturbance at this facility. MCMANIGAL stood facing these doors for approximately 11 minutes, at which time, the tactical commander deemed it safe to affect MCMANIGAL's arrest. MCMANIGAL appeared to see officers preparing to exit for an arrest and waved to them, stepping closer, apparently anticipating that they (MCMANIGAL) would be arrested. MCMANIGAL was then taken into custody by officers. Below is a photo of the

**Page 5 – Affidavit of Micah Coring**

security video showing the individual waving to officers.



12.      During MCMANIGAL's booking process, their belongings were inventoried, and a suspicious device was found sitting upright in their backpack. The device bore a label reading: DO NOT OPEN CONTAINS: U-DIMETHYLHYDRAZINE TRIETHYLALUMINIUM WILL IGNITE IF EXPOSED TO AIR. Additionally, the label had a hand-drawn and colored hazmat placard with a red 4, green 4, yellow 3, and do not expose to water symbol. Below are photos of the device.



**Page 6 – Affidavit of Micah Coring**

12.     I contacted an ATF Special Agent who consulted with an ATF Forensic Chemist. It was concluded, the chemical name and labeling were found to indicate a self-igniting Molotov Cocktail.  Portland Police Bureau's Bomb Squad came to the ICE facility and recovered the device for safe storage until it could be tested in a laboratory.  Following consultation with explosive experts, additional forensic chemists with ATF, FBI, and NASA scientists, the decision was made to destroy the device due to the risk of exposing the contents to oxygen and the fear the chemical components may self-ignite given enough time to react with each other. The device was counter-detonated with explosives by a bomb technician after multiple failed attempts to identify the contents using a forensic laser tool.

13.     On December 22, 2020, a Special Agent from the ATF and a Special Agent Bomb Technician from the FBI conducted a consensual interview of MCMANIGAL at their home. During the interview, MCMANIGAL demonstrated knowledge that the chemicals listed on the device's label would have to be handled in an oxygen-free environment.  MCMANIGAL confessed the device contained water and "explained that it was meant to waste people's time if they were arrested again for just standing around. MCMANIGAL added that it [their plan] appeared successful."

## Conclusion

14.     Based on the foregoing, I have probable cause to believe that Rowan MCMANIGAL committed the crime of False Information and Hoaxes while on federal property, namely the Portland Field Office of the Immigration and Customs Enforcement, in violation of 18 U.S. Code § 1038.  I therefore request that the Court issue a criminal complaint and arrest warrant charging MCMANIGAL with that offense.

15.     Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Greg Nyhus.  AUSA Nyhus informed me that in his opinion, the affidavit is legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*(By telephone)*
Micah CORING
Senior Special Agent
Federal Protective Service

Sworn to by telephone or other reliable means in accordance with Fed. R. Crim. P. 4.1 at __10:10 a.m.__ ~~am/pm~~ on May __27__, 2021.

/s/ Youlee Yim You
HONORABLE YOULEE YIM YOU
United States Magistrate Judge

Page 8 – Affidavit of Micah Coring